# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7708 | **DATE** | 9/13/2004 |
| **CASE TITLE** | Heller Financial, Inc. vs. Whitemark at Fox Glen, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Partial Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Plaintiff's Motion for Partial Summary Judgment is granted. See attached.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | SEP 2 1 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HELLER FINANCIAL, INC.,
a Delaware corporation,

        Plaintiff,

v.

WHITEMARK AT FOX GLEN, LTD.,
a Florida limited partnership; FOX GLEN
MANAGEMENT CORPORATION, a Florida
corporation; KENNETH LAWRENCE WHITE;
and WILLIAM D. RIGSBY,

        Defendants.

Case No.: 02 C 7708

Honorable Charles R. Norgle

DOCKETED
SEP 2 1 2004

## OPINION AND ORDER

**CHARLES R. NORGLE**, District Judge

Before the court is Plaintiff Heller Financial, Inc.'s Motion for Partial Summary Judgment. For the following reasons, Plaintiff's Motion for Partial Summary Judgment is granted.

### I. INTRODUCTION[1]

**A. Background**

Plaintiff Heller Financial, Inc. ("Heller") is incorporated in the state of Delaware, and has its principal place of business in the state of Illinois. Whitemark at Fox Glen is a Florida partnership consisting of Whitemark Homes, Inc. (a Florida corporation) and Fox Glen Management Corporation (also a Florida corporation). Kenneth White and William Rigsby (both

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1



citizens of Florida) are, respectively, President and Vice-President of Whitemark Homes. (Throughout this opinion, the defendants will be referred to collectively as "Fox Glen.") There is complete diversity between the parties, and there is no dispute that the amount in controversy exceeds $75,000. The court therefore has subject matter jurisdiction over this matter under 28 U.S.C. § 1332.

The Fox Glen partnership was formed in order to purchase lots of real estate in Winter Springs, Florida, to build homes on those lots, and to sell those homes. Fox Glen ultimately built and sold approximately 100 homes. The court will refer to this enterprise as "the Project." As a means of financing the Project, Fox Glen entered into an agreement with Heller in which Heller loaned Fox Glen $1,762,500. The court will refer to this agreement as "the Loan." The Loan was memorialized in a Loan Agreement, a Promissory Note, and an Agreement of Principals, all dated December 20, 1996. See Compl., Ex.s 1-3.

The Loan Agreement provided that Fox Glen pay out Project revenues in a certain order. See Compl., Ex. 1, Loan Agreement ¶ 1.8. Importantly, ¶ 1.8 of the Loan Agreement indicated that Fox Glen was to pay "Project Costs" prior to repaying the Loan interest and principal. Id. "Project Costs" were defined as "all costs and expenses of acquiring, developing, constructing, marketing and disposing of the Project as set forth in the Budget." Id.

The Promissory Note contained the following language: "none of Maker, any partner in Maker, or any Principal . . . shall be personally liable to pay the Loan or any other amount due . . . and Holder agrees to look solely to the Property . . . to secure the Loan." Compl., Ex. 2, Promissory Note ¶ 11. All parties agree that this language indicates that this was a nonrecourse loan. See Mem. in Supp. of Pl.'s Mot. for Summ. J., at 2; Def.'s LR 56.1(b)(3) Stmt. ¶ 15. A

2

loan is nonrecourse when the "debtor is not personally liable for the debt upon default, but rather, the creditor's recourse is solely to repossess the property granted as security for the loan." Heller Financial, Inc. v. Lee, No. 01 C 6798, 2002 U.S. Dist. LEXIS 15183, at *11 (N.D. Ill. Aug. 16, 2002) (Norgle, J.). Nonrecourse loans are commonly used in real-estate transactions. See Gregory M. Stein, *The Scope of the Borrower's Liability in a Nonrecourse Real Estate Loan*, 55 WASH. & LEE L. REV. 1207, 1217-18 (1998). In a nonrecourse real-estate loan, the lender no longer has the ability to hold a borrowing real-estate partnership or its general partners personally liable; the lender, however, takes a security interest in the real estate itself. Id.

Lenders who agree to risky nonrecourse loans may insist on something more than typical consideration from a borrower. Id. at 1218. In this case, Heller and Fox Glen agreed that the interest rate for the Loan would be fixed at fifteen per cent each year, Compl., Ex. 1, Loan Agreement ¶ 1.4, and that Fox Glen would pay Heller forty per cent of the Project revenues. Id. at ¶ 1.7. In addition, nonrecourse loans may contain protective "carve-outs," or provisions that identify certain types of borrower default that will render the borrower personally liable. Heller, 2002 U.S. LEXIS 15183, at *11. Heller and Fox Glen agreed that Fox Glen would be personally liable in the event of, *inter alia*, Fox Glen's "misappropriation of any funds deriving from the Property . . . ." Compl., Ex. 2, Promissory Note ¶ 11.

Heller loaned Fox Glen the money; Fox Glen then acquired the lots, built the homes, and sold the homes. Heller now asserts that Fox Glen has unjustifiably failed to repay the Loan. See Mem. in Supp. of Pl.'s Mot. for Partial Summ. J., at 2. In response, Fox Glen contends that it ran into legal difficulties in acquiring the lots from their former owner, and was forced to sue to obtain the lots. Fox Glen asserts that due to this delay its affiliates, Whitemark Homes and Oak

Park Homes, incurred expenses Fox Glen calls "capitalized overhead." Fox Glen contends that the total cost of this "overhead" was approximately $678,000, that this "overhead" was a legitimate Project Cost, and as such was properly paid before the Loan was repaid.

Heller, however, asserts that there is approximately $815,000 on Fox Glen's ledgers in accounts receivable from Whitemark Homes and Oak Park Homes. In deposition, White testified that these accounts receivable reflect transfers from Fox Glen to Whitemark and Oak Park. Pl.'s Mot. for Partial Summ. J., Ex. 1, White dep. at 38-39. Heller contends these accounts receivable represent Project revenues that Fox Glen wrongfully transferred to Whitemark and Oak Park for the purpose of avoiding its obligation to repay the Loan. See Mem. in Supp. of Pl.'s Mot. for Partial Summ. J., at 5. Heller alleges that Fox Glen has thus effectively misappropriated approximately $815,000 Project revenues that should have gone to pay back the Loan, and that under the terms of ¶ 1.8 of the Promissory Note, Fox Glen is now personally liable for that amount. See id. at 5-7.

**B. Procedural Framework**

Heller has filed a two-count complaint in tort against Fox Glen, alleging that Fox Glen's transfer of $815,931.24 to its affiliates was an act of both misappropriation and conversion. Heller has since filed a Motion for Partial Summary Judgment on the misappropriation count only. That motion is now fully briefed and before the court.

## II. DISCUSSION

**A. Standard for Summary Judgment**

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The

4

nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999). The Seventh Circuit has indicated that cases involving contract interpretation are "particularly suited to disposition by summary judgment." United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios, 220 F.3d 539, 542 (7th Cir. 2000).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the nonmoving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the nonmoving party's favor must be drawn from specific facts identified in the record that support the nonmoving party's position. Waldridge v. Am. Hoechst Corp., 24 F.3d

918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Heller's Claim of Misappropriation

As a preliminary matter, the court notes that the parties have agreed that "[t]his Agreement shall be governed by and construed in accordance with the internal laws of the State of Illinois." Compl., Ex. 1, Loan Agreement ¶ 8.7. The court therefore analyzes Heller's claim under Illinois law.

In Illinois, misappropriation is sometimes referred to as "a form of unfair competition . . . ." Bd. of Trade of the City of Chicago v. Dow Jones & Co., Inc., 456 N.E.2d 84, 88 (Ill. 1983). In these sorts of misappropriation cases, one party is alleged to have unfairly obtained, sold, or disclosed the intellectual property of another party. See id.; see also Am. Antenna Corp. v. Amperex Elec. Corp., 546 N.E.2d 41, 44 (Ill. App. Ct. 1989) (explaining that acquiring or disclosing a trade secret is misappropriation). This sort of misappropriation was recognized for the first time as a tort in Illinois in Capitol Records, where the defendant had purchased, recorded, and resold Capitol's music recordings. Capitol Records, Inc. v. Spies, 264 N.E.2d 874 (Ill. 1970).

However, Illinois courts have also recognized that misappropriation can have a broader, more general meaning. In Vogel, an Illinois Appellate court indicated that "misappropriation is the unauthorized, improper, or unlawful use of property for a purpose other than that for which it was intended." In re Vogel, 684 N.E.2d 1035, 1039 (Ill. App. Ct. 1997). Illinois courts have thus recognized that misappropriation can simply mean an inappropriate taking of property. See

Falk v. N. Trust Co., 763 N.E.2d 380, 381-82 (Ill. App. Ct. 2001) (misappropriation occurred where funds were withdrawn from plaintiff's bank account without proper authorization). The court understands Heller's claim of misappropriation to fall under the broader, more general meaning of that term.

The court begins its analysis of Heller's claim by noting that Heller asserts that Fox Glen's ledger, dated October 24, 2002, shows accounts receivable totaling $815,931.24 from two of Fox Glen's affiliates, Whitemark Homes and Oak Park Homes. This assertion is reflected in ¶ 17 of Heller's Local Rule 56.1(a)(3) Statement. Under Local Rule 56.1, in summary judgment proceedings, movants are required to submit a statement of material facts that (according to movant) entitle it to summary judgment. Rule 56.1(a)(3); see also Malec v. Sanford, 191 F.R.D. 581, 583 (N.D. Ill. 2000). These statements should be short, material, and supported by specific references to the record that support the facts. Rule 56.1(a)(3); see also Malec, 191 F.R.D. at 583. Heller here has properly followed rule 56.1(a)(3). Its statement regarding Fox Glen's accounts receivable is short, material, and supported by specific references to the record. This statement reads as follows: "Fox Glen's Year-to-Date Ledger-Accrual dated October 24, 2002, for the period January 1, 2002, through September 30, 2002, shows accounts receivable due to Fox Glen from Oak Park and Whitemark Homes of $267,782.86 and $548,148.38, respectively. (White Dep. Ex. 6; White Dep. at 38 lines 8-16)."

According to Rule 56.1(b)(3), Fox Glen, as nonmovant, is now required to respond. Fox Glen's response must be a direct reply to the fact asserted. See Bordelon v. Chicago Sch. Reform Bd. of Trs., 233 F.3d 524, 528 (7th Cir. 2000) ("rule [56.1(b)(3)] is not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted"). A district court may

7

accept material facts in a movant's 56.1(a)(3) statement as true if the nonmovant's response is "evasive." See id. at 527-28; see also Jankovich v. Exelon Corp., No. 01 C 7436, 2003 U.S. Dist. LEXIS 1466, at *13 (N.D. Ill. Jan. 31, 2003) (Kocoras, C.J.). Fox Glen's 56.1(b)(3) response to Heller's 56.1(a)(3) statement ¶ 17 reads as follows:

> Those ledger items do not reflect the overhead expenses which had been incurred by Whitemark contemporaneously therewith, for which those payments were intended to compensate. They do not, and were not, intended to accurately reflect the liabilities of Whitemark Homes or Oak Park to Fox Glen until such time as the overhead expenses owed by Fox Glen to Whitemark Homes and Oak Park had been properly calculated and netted out of these amounts on the general ledger. These overhead expenses incurred by Whitemark Homes for the Project were deductible from the sales proceeds under the Loan Agreement. Therefore, those amounts do not represent the amount of money payable to Heller under the Loan Agreement. (Aff. of K. Larry White, ¶ 6; White Dep., pp. 23-24, 39-41, 45-53.)

Nowhere in this response is there a direct admission or denial that there is, on Fox Glen's ledger, $815,931.24 in accounts receivable from Whitemark and Oak Park Homes. The court therefore deems this fact to be admitted. See Bordelon, 233 F.3d at 527-28; Jankovich, 2003 U.S. Dist. LEXIS 1466, at * 13.

The issue before the court, then, is whether the transfer of funds from Fox Glen to its affiliates Whitemark and Oak Park was a properly authorized distribution of Project revenue under ¶ 1.8 of the Loan Agreement. If it was not, this transfer of funds constitutes misappropriation under Illinois law. See In re Vogel, 684 N.E.2d at 1039.

This matter comes before the court as a motion for summary judgment. Heller must therefore meet a high standard to prevail. Heller must show that, viewed in the light most favorable to Fox Glen, the record and all inferences show that there is no genuine issue of material fact, and that Heller is therefore entitled to judgment as a matter of law. See Ameritech,

8

220 F.3d at 821. Heller has met this standard. There is no dispute that Heller made the loan to Fox Glen. There is no dispute that, if the $815,931.24 were not a Project Cost, Fox Glen would be required to repay that amount to Heller under ¶ 1.8 of the Loan Agreement. There is no dispute that Fox Glen transferred the $815,931.24 to Whitehead and Oak Park. Fox Glen's records do not show that this transfer was made to pay for Project Costs, as defined by the Loan Agreement. Furthermore, Fox Glen has not adequately explained why a legitimate Project Cost or "overhead" would be reflected in its ledger as an account receivable. As a matter of law, the court therefore holds that Fox Glen has misappropriated $815,931.24 that should have been repaid to Heller under the Loan Agreement.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is granted. IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 9/17/04